IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

RHONELLA CHAFFIN,

        Plaintiff,

v.                                  CIVIL ACTION NO. 3:08-0791

CLINT WATFORD and
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA
(f/k/a TRAVELERS INDEMNITY COMPANY OF ILLINOIS),

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Travelers Property Casualty Company of America's (hereinafter Travelers) Motion for Summary Judgment. [Doc. No. 48]. For the following reasons, the Court **DENIES** Travelers' Motion for Summary Judgment as to Count I and **GRANTS** its Motion for Summary Judgment as to Count II.

**I.
STANDARD OF REVIEW**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## II.
## DISCUSSION

On October 22, 2001, Plaintiff Rhonella Chaffin was driving a vehicle that was stuck from behind by a vehicle driven by Clint Watford, the tortfeasor. As a result of the accident, Plaintiff asserts she sustained injuries to her shoulder, arm, and neck. Mr. Watford was insured by AIG for $100,000, and the vehicle Plaintiff was driving was leased by her employer Columbia Gas Transmission Corporation and insured by Travelers. Ultimately, with Travelers' consent, Plaintiff settled with AIG for $80,000. Although Plaintiff settled for less than the tortfeasor's liability limits, she claims that her damages actually exceed $100,000 so she also sought underinsured motorist (UIM) coverage from Travelers. When those efforts failed, Plaintiff brought this action for coverage and bad faith. Travelers moves for summary judgment on both grounds.

On January 19, 2010, the Court held a Pretrial Hearing and heard argument on Travelers' motion. As discussed at the hearing, the Court must consider the evidence regarding the amount of damages Plaintiff suffered in the light most favorable to her. Upon doing so, the Court

-2-

found that a jury issue exists as to whether the amount of her damages exceed the $100,000 necessary to trigger UIM coverage. Therefore, the Court orally **DENIED** Travelers' motion with respect to Plaintiff's claim for UIM coverage on Count I. However, the Court held in abeyance Travelers' motion with respect to Plaintiff's bad faith claim on Count II. Having now considered those arguments, the Court **GRANTS** the remainder of the motion in favor of Travelers.

Travelers argues that Plaintiff has failed to produce any evidence establishing that it acted in bad faith in adjusting her claim. On the other hand, Plaintiff asserts that Travelers continually and unjustifiably has denied her claim in violation of West Virginia's Unfair Trade

Practices Act (UTPA), West Virginia Code § 33-11-4(9).[1] In order to resolve this issue, the Court

---

[1] Throughout the Amended Complaint and the briefing, Plaintiff refers to West Virginia Code § 33-1-4(9). However, the correct citation is West Virginia § 33-11-4(9). This section provides, in relevant part:

> The following are defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:
>
> (9) *Unfair claim settlement practices*. -- No person shall commit or perform with such frequency as to indicate a general business practice any of the following:
>
> \* \* \*
>
> (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
>
> \* \* \*
>
> (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
>
> \* \* \*
>
> (f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
>
> \* \* \*
>
> (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered[.]

W. Va. Code § 33-11-4(9), in part.

must look to the evidence submitted with respect to this claim.

As previously mentioned, the auto accident occurred on October 21, 2001. On or about November 10, 2005, Plaintiff's prior counsel, Damon Faldowski, wrote Travelers a letter about the availability of UIM coverage. With the letter, counsel enclosed various reports and records documenting, inter alia, the accident and Plaintiff's injuries. By letter dated December 28, 2005, Rod Gillespie, a Technical Specialist with Constitution State Services, denied UIM coverage on the grounds that the vehicle Plaintiff was driving was leased rather than owned by NiSource.[2] On January 3, 2006, Mr. Faldowski wrote Mr. Gillespie a letter pointing out that the policy included an additional insured-lessor endorsement. Upon review of the policy, Mr. Gillespie agreed and stated in a letter dated March 1, 2006, that Travelers could "pay up to the limits of our coverage for West Virginia which is $50,000 per accident." *Letter from Mr. Gillespie to Mr. Faldowski* (Mar. 1, 2006). The letter also requested proof of loss from Plaintiff and "proof the underlying policy limits issued by AIU Insurance Company have been exhausted." *Id.*

The next letter submitted by Plaintiff to the Court in support of her bad faith claim is dated November 15, 2006, over seven months after Mr. Gillespie sent his letter. In the November 15 letter, Mr. Faldowski wrote Mr. Gillespie advising him that under the West Virginia Supreme Court's decision in *Horace Mann Insurance Co. v. Adkins*, 599 S.E.2d 720 (W. Va. 2004), an injured person can settle with a tortfeasor's insurer for less than the full liability limits of the policy and then

---

[2]Plaintiff's employer Columbia Gas Transmission Corporation is a division of NiSource, Inc. According to the letter from Mr. Gillespie dated December 28, 2005, Constitution State Services represents NiSource in automobile insurance claims.

proceed with a UIM claim so long as the UIM carrier receives credit for the full limits of the tortfeasor's liability coverage. Thus, as the tortfeasor in this case had liability limits of $100,000 under AIG's policy, Plaintiff's damages would have to exceed that amount in order to obtain UIM coverage and Travelers only would be required to pay for those damages which exceed the $100,000 trigger. Mr. Faldowski further indicated that on November 10, 2005, he sent reports and records relevant to Plaintiff's claim to another individual working on the claim on behalf of Travelers. Given the facts and circumstances surrounding the case, Mr. Faldowski then demanded Travelers pay Plaintiff $50,000 in UIM benefits. If Travelers decided not to pay the limits, Mr. Faldowski requested arbitration.

On December 14, 2006, Mr. Faldowski wrote another letter to Mr. Gillespie. In this letter, Mr. Faldowski stated he sent Mr. Gillespie a letter dated December 1, 2006, advising him that he was close to settling with the tortfeasor and inquired as to whether Travelers would be willing to waive subrogation. Mr. Faldowski further stated that he called Mr. Gillespie on December 4, 2006, and told him that Plaintiff intended on settling the underlying claim for $80,000 and again asked if Travelers was willing to waive subrogation. According to Mr. Faldowski, Mr. Gillespie told him that he would have to confer with defense counsel and he would get back in touch with him on the subrogation issue. Mr. Faldowski apparently then called again on December 7, 2006, but Mr. Gillespie was on vacation. The two appear to have spoken again on December 11, 2006, at which time Mr. Faldowski again asked about subrogation. On December 13, 2006, Mr. Gillespie left Mr. Faldowski a voice mail message stating Travelers would not waive subrogation at this time. According to Plaintiff, Travelers' ultimately agreed to subrogation on December 27, 2006.

The next letter submitted by Plaintiff is dated February 13, 2007. In that letter, Mr. Gillespie wrote Mr. Faldowski and stated he received his letter dated February 1, 2007, requesting a decision on whether it would provide Plaintiff UIM coverage. Mr. Gillespie also referenced a letter he sent Mr. Faldowski on December 27, 2006, which purports to outline Travelers' position on UIM coverage. It appears that Mr. Gillespie informed Mr. Faldowski in that letter that Travelers believed that the doctrine of "constructive exhaustion" may not apply in Plaintiff's case, which would require her to exhaust the $100,000 policy limits of the tortfeasor before she could make a claim for UIM coverage.[3] In the letter dated February 13, Mr. Gillespie further notes that Plaintiff settled with the tortfeasor for $80,000, and regardless of its position on exhaustion, Travelers did not believe that the value of Plaintiff's claim exceeds the $80,000 paid by AIG. Nevertheless, Mr. Gillespie offered $5,000 to settle the claim.

The next letter Plaintiff provided to the Court was written nearly a year later on January 7, 2008. In that letter, Mr. Gillespie wrote that he received Plaintiff's correspondence regarding an arbitrator, but that Travelers would not agree to arbitration as it was not a requirement under the policy. In addition, Mr. Gillespie reiterated that he did not believe that the value of the claim exceeded $100,000. He again offered Plaintiff $5,000 to settle the claim. On May 28, 2008, Plaintiff's current counsel filed the present action in this Court.

---

[3]According to Mr. Gillespie in the letter dated February 13, Mr. Faldowski wrote Mr. Gillespie on January 16, 2007, stating he disagreed with Travelers' position.

In her Amended Complaint, Plaintiff asserts that Travelers violated the UTPA by

(a) Failing to acknowledge, act reasonably and promptly upon communications with respect to claims arising under its insurance policies;

(b) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(c) Refusing to pay claims without conducting a reasonable investigation based upon all available information; [and]

(d) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered[.]

*Amended Complaint*, at ¶ 20(a)- (d) (These allegations parallel W. Va. Code § 33-11-4(9)(b), (d), (f), and (g)). In *Rose ex rel. Rose v. St. Paul Fire & Marine Ins. Co.*, 599 S.E.2d 673 (W. Va. 2004), the West Virginia Supreme Court explained that "the UTPA makes clear that an insurance company must fully investigate an insurance claim, and make a reasonable offer to settle the claim if warranted by the evidence." 599 S.E.2d at 681. In addition, the UTPA prohibits an insurance company from "'refusing to pay claims without conducting a reasonable investigation based upon all available information[.]'" *Id*. (quoting W. Va. Code § 33-11-4(9)(d)). "With the information obtained from the investigation, W. Va. Code, 33-11-4(9)(f) requires the insurance company to 'attempt[ ] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.'" *Id*. (quoting W. Va. Code § 33-11-4(9)(f)). Here, Plaintiff

argues that Travelers' actions violated the UTPA because it took a significant amount of time to investigate and process her claim and it asserted meritless grounds for denial.

In support, Plaintiff points to the fact that Travelers originally denied the claim because the vehicle she was driving was leased and Travelers stated it was not covered under the policy. However, the Court notes that, after Plaintiff's counsel pointed out the error, Travelers admitted the mistake and asked that Plaintiff submit proof of loss and proof that the underlying policy limits were exhausted. Travelers made its request on March 1, 2006. Plaintiff submitted no evidence to this Court that she responded to Travelers' request until November of 2006, when counsel sent additional information related to her claim for damages and a copy of the *Adkins* case to show that she could continue to pursue UIM coverage even if she settles the underlying claim for less than the policy limits. Shortly thereafter, on December 1, 2006, Mr. Faldowski informed Mr. Gillespie that Plaintiff was close to a settlement with the tortfeasor and he began asking if Travelers would be willing to subrogate. There apparently was some back and forth conversations and by December 13, Mr. Gillespie informed Mr. Faldowski that Travelers was not willing to subrogate at that time. Thereafter, there also was a discussion about whether constructive exhaustion could be applied in this case, but by February 13, 2007, Mr. Gillespie informed counsel that regardless of Travelers' position on exhaustion, he did not believe the value of Plaintiff's claim exceeded the value of the amount she settled for with the tortfeasor. To date, Travelers maintains its position that Plaintiff's damages do not exceed $100,000.

In considering the facts before the Court for purposes of summary judgment, the Court finds that Plaintiff has failed to set forth sufficient evidence that a reasonable juror could find that Travelers acted in bad faith. From the evidence presented, Travelers admitted that $50,000 UIM coverage existed as early as March 1, 2006. Upon such admission, however, Travelers requested that Plaintiff submit evidence regarding the amount of her loss and evidence that the liability limits of the tortfeasor were exhausted. Despite this request, Plaintiff has not submitted any evidence to the Court to show she responded to the letter before her communications with Mr. Gillespie in November of 2006. Thereafter, it is clear that the parties began fairly frequent communications in attempting to resolve the claim.

Plaintiff argues that Travelers' bad faith includes the fact that it did not initially waive subrogation upon Mr. Faldowski's request. However, Plaintiff does not argue Travelers was required to waive subrogation and, in any event, it ultimately waived subrogation within a month of the request. Plaintiff also asserts Travelers acted in bad faith by its continual reliance upon exhaustion of the underlying insurance benefits despite the holding in *Adkins,* which Plaintiff states makes actual exhaustion unnecessary. However, it is clear that, irrespective of the exhaustion issue, Travelers also was not convinced that her loss exceeded the value of the tortfeasor's policy. Indeed, as previously mentioned, Travelers continues to maintain that position today.

With respect to Plaintiff's damages, Travelers asserts that the medical bills attributable to this accident add up to $18,047.64, and Plaintiff admits she was able to return to work immediately after this accident and there are no lost wages as a result of this accident. At the

hearing, Plaintiff stated her special damages were in excess of $30,000, and she also requests pain, suffering, mental anguish, loss of enjoyment of life, and increased risk of future complications and inconvenience. *See Amended Complaint*, at ¶ 9. While the Court finds this evidence taken in a light most favorable to Plaintiff is sufficient to present a jury issue on whether her total damages will exceed the $100,000 trigger, the Court finds it was not unreasonable for Travelers to take the position that the total amount of damages is less than the limit and deny the claim. Given this posture, the Court finds that a reasonable juror could not conclude that Travelers was acting in bad faith by believing from the evidence Plaintiff provided that her total loss does not exceed $100,000.

The Court recognizes that Plaintiff has made a claim under West Virginia Code § 33-11-4(9)(g), which prohibits insurance companies from "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered[.]" W. Va. Code § 33-11-4(9)(g). At first blush, it may appear that summary judgment on this aspect of Plaintiff's bad faith claim would be inappropriate until the underlying UIM claim is resolved. However, it is axomatic with any clam under West Virginia Code § 33-11-4(9) that Plaintiff also must prove that the insurance company violated the UPTA as a "general business practice." *See* Syl. Pt. 3, *Jenkins v. J.C. Penney Cas. Ins. Co.*, 280 S.E.2d 252 (W. Va. 1981) ("More than a single isolated violation of W. Va. Code, 33-11-4(9), must be shown in order to meet the statutory requirement of an indication of 'a general business practice,' which requirement must be shown in order to maintain the statutory implied

cause of action.").[4]  In order to establish a general business practice in a single insurance claim action, the West Virginia Supreme Court stated in Syllabus Point 4 of *Dodrill v. Nationwide Mutual Insurance, Co.*, 491 S.E.2d 1 (W. Va .1996) that:

> To maintain a private action based upon alleged violations of W. Va. Code § 33-11-4(9) in the settlement of a single insurance claim, the evidence should establish that the conduct in question constitutes more than a single violation of W. Va. Code § 33-11-4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a 'general business practice' and can be distinguished by fair minds from an isolated event.

Syl. Pt. 4, *Dodrill*.  Here, for the reasons explained above with respect to how Travelers handled this claim, the Court finds that Plaintiff has failed to offer sufficient evidence to show that it engaged in a general business practice violating the UTPA even if Plaintiff ultimately recovers UIM benefits that are reasonably similar to the amount Plaintiff previously demanded. *See Stonewall Jackson Mem. Hosp. Co. v. American United Life Ins. Co.*, 525 S.E.2d 649, 658 (W. Va. 1999) (affirming summary judgment on bad faith claim where the plaintiff failed to make any showing to the court that the defendant violated the UTPA as a general business practice).  Having not offered sufficient evidence of bad faith upon which a reasonable juror could return a verdict in Plaintiff's favor, the Court **GRANTS** Travelers' Motion for Summary Judgment on Count II.

---

[4]*Jenkins* was overruled on other grounds by *State ex rel. State Farm Fire & Cas. Co. v. Madden*, 451 S.E.2d 721 (W. Va. 1994).

-12-

## III.
## CONCLUSION

For the foregoing reasons, the Court **DENIES** Travelers' Motion for Summary Judgment with respect to Count I of the Amended Complaint, but **GRANTS** the motion with respect to Count II.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: January 29, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE